UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
CINDY OLSEN,

                Plaintiff,

                                  <u>MEMORANDUM & ORDER</u>
     -against-                    15-CV-4064(JS)(AYS)

SUFFOLK COUNTY, STEVEN BELLONE,
and EDWARD WEBBER,

                Defendants.
---------------------------------------X
APPEARANCES
For Plaintiff:          Matthew Ian Marks, Esq.
                    Ricotta & Marks, P.C.
                    31-10 37th Avenue, Suite 401
                    Long Island City, NY 11101

For Defendants:        Megan E. O'Donnell, Esq.
                    Suffolk County Attorney's Office
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788

SEYBERT, District Judge:

        Plaintiff Cindy Olsen ("Plaintiff") commenced this action against defendants Suffolk County (the "County"), Steven Bellone ("Bellone"), and Edward Webber ("Commissioner Webber" and, collectively, "Defendants") asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and state law.  Presently pending before the Court is Defendants' motion to dismiss the Complaint.  (Defs.' Mot., Docket Entry 14.)  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

In or about 1991, Plaintiff was hired as a police officer at the Suffolk County Police Department (the "Police Department") and assigned to the Sixth Precinct. (Am. Compl., Docket Entry 10, ¶ 10.) Plaintiff was promoted to Sergeant in or about November 2002, and promoted to Community Oriented Police Enforcement (COPE) Sergeant in or about 2006. (Am. Compl. ¶ 11.) Plaintiff was the only female Sergeant in the Sixth Precinct. (Am. Compl. ¶ 12.) Bellone is the County Executive and Commissioner Webber is the Commissioner of the Police Department. (Am. Compl. ¶¶ 7-8.)

I.    <u>Plaintiff's Relocation</u>

In or about April 2014, Sixth Precinct Inspector Thomas Palmieri ("Inspector Palmieri") directed that Plaintiff be relocated to a "different, less desirable and prestigious office." (Am. Compl. ¶ 14.) Plaintiff previously shared an office equipped with gun lockers and computers with her partner, Steve Demeo ("Demeo"). (Am. Compl. ¶ 14.) Plaintiff was moved to her subordinates' office and a male civilian research analyst replaced Plaintiff in her old office. (Am. Compl. ¶ 14.) Demeo was provided with his own office and Plaintiff was instructed to gather and organize Demeo's files and clothing and move these items, along with lockers and desks, to Demeo's new office. (Am. Compl. ¶ 14.)

At or around this time, Captain Jan Rios ("Captain Rios")[1] told Plaintiff that Palmieri said he "wanted to get rid of her." (Am. Compl. ¶ 15.) Additionally, when Plaintiff asked why she was being moved Captain Rios indicated that "there had been an intention to remove [Plaintiff] from that unit, without explanation" and warned that "[Inspector] Palmieri felt that they could not have a woman off the wall, carrying on around the precinct." (Am. Compl. ¶ 16.) Plaintiff alleges that Captain Rios is responsible for employee hiring, firing, promotions, and discipline, and is also responsible for training and supervising employees regarding harassment, discrimination, and retaliation. (Am. Compl. ¶ 17.)

## II. Everett Wehr

On or about May 26, 2014, Plaintiff was eating dinner with coworkers outside the precinct and Everett Wehr ("Officer Wehr"), a police officer in the Sixth Precinct's crime control section and union delegate, began massaging her neck and back and pressed his genitals against Plaintiff's back. (Am. Compl. ¶ 18.) Plaintiff told him to stop and stated "'is this supposed to be a massage? I can feel your genitals.'" (Am. Compl. ¶ 18.) Plaintiff had "some contact" with Officer Wehr based on her interactions with Gary Thompson ("Officer Thompson"), a police officer and union

---

[1] Captain Rios is male. (Am. Compl. ¶ 15.)

delegate for Plaintiff's subordinates.  (Am. Compl. ¶ 19.)  On or about June 9, 2014, Officer Wehr was transferred to the Police Department headquarters building.  (Am. Compl. ¶ 20.)

On or about June 23, 2014, at 6:00 p.m., Officer Wehr appeared in Plaintiff's office doorway and indicated that he was cleaning out his desk.  (Am. Compl. ¶ 22.)  When Plaintiff looked up from her desk, "Wehr exposed himself and put his erect penis over [Plaintiff's] shoulder at mouth level [and] was holding his penis and pointing it at her."  (Am. Compl. ¶ 22.)  Plaintiff was frightened and covered her eyes with her hands.  (Am. Compl. ¶ 22.)  When Plaintiff uncovered her eyes, she saw that "Wehr's penis was still exposed, and that he had repositioned himself so that he was standing behind her."  (Am. Compl. ¶ 22.)  Officer Wehr proceeded to grab Plaintiff's right wrist and pull it; when Plaintiff struggled, Officer Wehr released her wrist and continued to stand there.  (Am. Compl. ¶ 22.)  Officer Wehr then violently grabbed her right wrist and forcibly held her hand on his penis.  (Am. Compl. ¶ 22.)  Officer Wehr let Plaintiff's hand go, and lingered behind her until he went to exit, stating "'I'm coming back.  I'll be back.  I'll visit.'"  (Am. Compl. ¶ 22.)

Plaintiff felt threatened and was traumatized by the incident.  (Am. Compl. ¶ 23.)  Plaintiff was fearful of reporting Officer Wehr's conduct "as she had observed throughout her employment numerous victims of sexual harassment in the precinct

4

who were not protected, were discouraged from coming forward, and whose complaints were ignored or concealed." (Am. Compl. ¶ 23.)

On or about October 6, 2014, Plaintiff was stationed in front of another officer's home while he attended his son's funeral. (Am. Compl. ¶ 31.) Prior to her assignment, Plaintiff told Captain Rios she was afraid she would see her attacker. (Am. Compl. ¶ 31.) At about 2:50 p.m. that day, Officer Wehr pulled up the driveway of the officer's home and stepped out of an unmarked car. (Am. Compl. ¶ 31.) Officer Wehr whistled at Plaintiff, and "started strutting on the front path of the house." (Am. Compl. ¶ 31.) Plaintiff felt threatened; she entered her car, locked it, and called the Sixth Precinct to request a replacement at her post. (Am. Compl. ¶ 31.) After bringing food into the house, Officer Wehr got into his car, pulled up next to Plaintiff's car and "taunt[ed]" her by beeping the horn and moving the car backwards and forwards. (Am. Compl ¶ 31.) Officer Wehr sped away, then returned and pulled up next to Plaintiff's car; he "stared at her, taunting her and intimidating her" and then sped away. (Am. Compl. ¶ 31.)

III. Reports to Police Department Personnel

In or about July 2014, Plaintiff told Officer Thompson "there was an incident in which [Wehr] had done something inappropriate to her . . . [that] was serious and of a sexual nature." (Am. Compl. ¶ 24.) Officer Thompson replied, "Oh no,

[w]hat did he do now . . . [n]ever mind.  I don't want to know, I have to play golf with him this week."  (Am. Compl. ¶ 24.)  Officer Thompson said he was "concerned that Wehr was now stationed at Headquarters with access to several female civilians."  (Am. Compl. ¶ 24.)

On or about September 18, 2014, Plaintiff told Sergeant O'Shea that "someone who used to work in the 6th precinct came into the COPE office, exposed himself to her with an erect penis and forcibly made her touch his penis."  (Am. Compl. ¶ 25.)  Plaintiff did not name Officer Wehr and asked Sergeant O'Shea not report the incident because she would report it when she was ready. (Am. Compl. ¶ 25.)  Plaintiff later learned that O'Shea disclosed the incident to his supervisor, Lieutenant Riggio.  (Compl. ¶ 25.)

On or about September 23, 2014, Plaintiff told Lieutenant Riggio that a person who worked in Crime Control and used to work in the Sixth Precinct exposed himself to her.  (Am. Compl. ¶ 26.)  Plaintiff alleges that Lieutenant Riggio is responsible for the "discipline of employees and all other employment related issues" as well as training and supervising employees regarding harassment, discrimination, and retaliation. (Am. Compl. ¶ 27.)

In or about September 2014, Plaintiff's coworkers told Captain Rios that Plaintiff was "not acting like herself."  (Am. Compl. ¶ 28.)  When Captain Rios asked Plaintiff what was going

6

on, Plaintiff told him that someone who used to work in the Sixth
Precinct and was moved to headquarters "exposed himself to her
with an erect penis and forcibly made her touch his penis." (Am.
Compl. ¶ 28.) Captain Rios "responded hostilely, 'why didn't you
scream?' 'you're a supervisor!' . . . 'why did you wait until now
to report it[.]'" (Am. Compl. ¶ 28.) Plaintiff did not name
Officer Wehr specifically and asked Captain Rios not to report the
incident because she wanted to report it when she was ready. (Am.
Compl. ¶ 28.)

Around the same time, Captain Rios encouraged Plaintiff
to report the incident. (Am. Compl. ¶ 28.) Plaintiff expressed
that she was afraid to report the incident and feared encountering
her attacker again. (Am. Compl. ¶ 28.) Captain Rios advised that
"there would be backlash against [Plaintiff] if and when she names
her attacker." (Am. Compl. ¶ 28.)

In or about late September 2014, Lieutenant Riggio told
Sergeant O'Shea that they needed to confront Plaintiff and "stage
an intervention" in order to encourage her to report her sexual
assault complaint. (Am. Compl. ¶ 29.) Plaintiff alleges that
Lieutenant Riggio and Sergeant O'Shea were already obligated to
report the incident pursuant to the Suffolk County Police
Department Rules and Procedures ("R&P"), which provide that all
members of the Police Department have a mandatory duty to bring
any harassing or coercive behavior to the attention of their

7

supervisor "independent of the personal wishes of the offended."
(Am. Compl. ¶ 30.)  Additionally, the R&P provides that:

> [E]ach supervisor of the [Police Department]
> shall be responsible for assisting in the
> prevention of sexual harassment . . . each
> supervisor of the [Police Department] shall be
> responsible for preventing acts of sexual
> harassment . . . every supervisor has the
> responsibility to assist any employee of this
> Department who comes to that supervisor with
> a complaint of sexual harassment.

(Am. Compl. ¶ 30 (quoting R&P Chapter 5, Section 7).)  Plaintiff
alleges that Sergeant O'Shea, Lieutenant Riggio, and Captain Rios
failed to follow the R&P.  (Am. Compl. ¶ 30.)

At a weekly staff meeting on or about October 8, 2014,
the discussion turned to sexual assault victims being brought to
the police station rather than the hospital "because advocates are
known to put ideas in victims' heads and then victims lie."  (Am.
Compl. ¶ 34.)  Plaintiff was upset by these statements and went to
the bathroom.  (Am. Compl. ¶ 34.)  Captain Rios and Deputy
Inspector Gerard McCarthy ("Inspector McCarthy") went to console
Plaintiff and stripped her of her gun.  (Am. Compl. ¶ 34.)  Captain
Rios told Inspector McCarthy what happened and indicated that
Officer Wehr committed the assault--thereby admitting that he knew
the identity of Plaintiff's attacker--and Plaintiff confirmed that
Officer Wehr sexually assaulted her.  (Am. Compl. ¶ 34.)  Inspector
McCarthy said, in sum and substance, "'this guy is 45 years old,
this is not the first time he has done this.'"  (Am. Compl. ¶ 34.)

8

Inspector McCarthy reported the incident to headquarters. (Am. Compl. ¶ 34.)

Thereafter, Plaintiff met with Captain Rios, Vinny DiResta, her union delegate, and Tim Morris, the head of the union. (Am. Compl. ¶ 35.) Plaintiff alleges that the purpose of this meeting was for "union personnel present to show that they were representing the union." (Am. Compl. ¶ 35.) The incident was not discussed, procedures were not explained to Plaintiff, and Plaintiff was not provided with forms. (Am. Compl. ¶ 35.) The union representatives did not try to contact Plaintiff after the meeting. (Am. Compl. ¶ 35.)

In or about October 2014, Sergeant O'Shea told Plaintiff that the "overarching opinions" of the precinct's police officers were that "'there had to be more to the story,' that they could not fathom that Wehr would sexually assault her." (Am. Compl. ¶ 40.) In or around December 2014, Sergeant O'Shea told Plaintiff that many officers did not understand why she delayed in reporting Officer Wehr's conduct, (Am. Compl. ¶ 41), and Captain Rios told Plaintiff that other supervisors, including Inspector Palmieri, did not understand why she waited so long to report the incident, (Am. Compl. ¶ 42).

On or about December 16, 2014, Plaintiff sent an internal correspondence form to Inspector Palmieri stating that she disclosed that she was a "victim of a sexual offense and sexual

harassment" to her superiors and union delegates on October 8,
2014, and she met with detectives from the Special Victims Unit,
who are completing an investigation.  (Am. Compl. ¶ 44.)  Plaintiff
also advised that she had not received any complaint forms and was
not directed to submit any paperwork.  (Am. Compl. ¶ 44.)

On or about December 22, 2014, Plaintiff spoke with
Jennifer McNamara, the County's Director of Labor Relations, about
the Police Department's lack of investigation into her matter.
(Am. Compl. ¶ 45.)  McNamara was not aware of an investigation and
gave Plaintiff the "Complainant's Report of Harassment or
Discrimination" form.  (Am. Compl. ¶ 45.)

In or about January 2015, Plaintiff learned that Officer
Wehr was spreading rumors that they had been in a sexual
relationship.  (Am. Compl. ¶ 46.)  In or about March 2015, Officer
Wehr was promoted to detective.  (Am. Compl. ¶ 50.)

IV.   Sergeant Lynch

Following Plaintiff's meeting with Captain Rios and
union personnel in or about October 2014, Plaintiff met with
Detective Giordano and Detective Kirk with the Special Victims
Unit as well as Sergeant Kelly Lynch ("Sergeant Lynch"),
Departmental Designee on Sexual Harassment and union delegate.
(Am. Compl. ¶ 36.)   In attempting to explain the incident,
Plaintiff became anxious and could not continue the meeting.  (Am.
Compl. ¶ 36.)  The Detectives and Sergeant Lynch brought Plaintiff

to a Police Department psychologist and then to Stonybrook Hospital. (Am. Compl. ¶ 36.) Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"). (Am. Compl. ¶ 36.)

Plaintiff alleges that Sergeant Lynch is responsible for "ensuring that employees are not subject to harassment or discriminatory treatment," as well as training and supervising employees regarding harassment, discrimination, and retaliation. (Am. Compl. ¶ 37.) Sergeant Lynch is also responsible for investigating sexual harassment complaints and reporting her findings to Bellone and Commissioner Webber. (Am. Compl. ¶ 37.) Pursuant to the R&P, the Departmental Designee must provide an employee with a Sexual Harassment Complaint Form and an Employee Rights Form. (Am. Compl. ¶ 38.) The Departmental Designee is also required to take the necessary steps to protect the employee from additional sexual harassment and make sure that "appropriate investigative and disciplinary measures may be initiated without delay." (Am. Compl. ¶ 38.) However, Sergeant Lynch did not provide Plaintiff with any complaint forms; did not interview Plaintiff; and did not "explain [Plaintiff's] rights to her" or inform Plaintiff that she had initiated an internal investigation. (Am. Compl. ¶ 39.) Sergeant Lynch did not attend any subsequent meetings with Plaintiff. (Am. Compl. ¶ 39.)

In or about March 2015, Sergeant Lynch asked Plaintiff to complete a sexual harassment complaint form. (Am. Compl. ¶ 51.)

11

Sergeant Lynch indicated that her investigation was "on hold" until the completion of the criminal investigation, and stated "'now I can start my investigation.'" (Am. Compl. ¶ 51.) Plaintiff alleges that the Police Department has an "unwritten policy or custom" that a sexual harassment and/or sexual assault claim will only be investigated after the completion of the accompanying criminal investigation. (Am. Compl. ¶ 51.) In or about early April 2015, Plaintiff submitted an additional complaint to Sergeant Lynch but has not received a response. (Am. Compl. ¶ 52.)

In or about November 2015, a Deputy Inspector of the Police Department told Plaintiff that the internal investigation into her complaint had been "on hold" pending the criminal investigation. (Am. Compl. ¶ 53.) Plaintiff believes that an internal investigation has not been commenced. (Am. Compl. ¶ 49.)

V.    Plaintiff's Leave of Absence

Plaintiff has been on sick leave since October 9, 2014, due to her PTSD. (Am. Compl. ¶ 47.) Plaintiff has utilized her sick leave, vacation days, and personal leave days. (Am. Compl. ¶ 47.) Plaintiff continues to receive a paycheck but by using her sick, vacation, and personal days, Plaintiff will be unable to receive the lump sum payment she would otherwise stand to receive when she retires. (Am. Compl. ¶ 47.) Plaintiff alleges that the R&P provides that when an employee is diagnosed with PTSD, a

12

supervisor must investigate the incident and complete an "Injured Employee Report." (Am. Compl. ¶ 48.) Captain Rios has failed to complete an Injured Employee Report, and as a result, Plaintiff's Workmen's Compensation process has not begun. (Am. Compl. ¶ 48.)

Plaintiff alleges that she is fearful to return to work since no disciplinary actions have been taken against Officer Wehr. (Am. Compl. ¶ 49.)

VI.   The Complaint

On July 10, 2015, Plaintiff commenced this action against the Police Department and the County. (See Compl.) On December 18, 2015, Plaintiff was granted leave to file an Amended Complaint. Plaintiff filed her Amended Complaint on December 21, 2015. (See Am. Compl.)

The Amended Complaint asserts six claims against the County, as well as claims against Bellone and Commissioner Webber in their individual and official capacities. (See generally Am. Compl.) First, Plaintiff alleges that the County violated Section 1983 because it was deliberately indifferent to violations of Plaintiff's constitutional rights, maintained a custom or practice of discrimination or retaliation, and subjected Plaintiff to a hostile work environment based on gender. (Am. Compl. ¶ 56.) Plaintiff alleges that Bellone and Commissioner Webber "unlawfully participated in and/or permitted" these acts of discrimination and retaliation. (Am. Compl. ¶ 57.)

13

Second, Plaintiff alleges that the County violated Title VII because it maintained a hostile work environment and discriminated against her based on gender. (Am. Compl. ¶ 59.) Third, Plaintiff alleges that the County violated Title VII by failing to reasonably investigate her sexual harassment complaint and/or provide an appropriate work environment in retaliation for Plaintiff's opposition to discriminatory practices. (Am. Compl. ¶ 61.)

Fourth, Plaintiff alleges that Defendants discriminated against Plaintiff in violation of New York State Human Rights Law ("NYSHRL") Section 296(1)(a). (Am. Compl. ¶ 62 (quoting N.Y. Executive Law § 296(1)(a)).)[2] Fifth, Plaintiff asserts that Defendants violated NYSHRL Section 296(7) by discriminating or retaliating against her based on her opposition to practices barred by the NYSHRL. (Am. Compl. ¶ 65 (citing N.Y. Executive Law § 296(7)).) Sixth, Plaintiff asserts that Bellone and Commissioner Webber violated NYSHRL Section 296(6) by aiding and abetting acts of discrimination and retaliation. (Am. Compl. ¶ 68.)

---

[2] While the Amended Complaint does not cite NYSHRL Section 296(1)(a) specifically, the quoted language in paragraph 62(a) is derived from that statutory provision.

## DISCUSSION

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (internal quotation marks and citation omitted).   To that regard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. The Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks and citation omitted).

Generally, the Court's consideration of a Rule 12(b)(6) motion to dismiss is "limited to consideration of the Complaint itself."  Dechberry v. N.Y. City Fire Dep't, 124 F. Supp. 3d 131, 135 (E.D.N.Y. 2015) (internal quotation marks and citation omitted).  However, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint."  Sira v. Morton, 380

15

F.3d 57, 67 (2d Cir. 2004) (internal quotation marks and citations omitted.)  See also FED. R. CIV. P. Rule 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")  If the Court considers matters outside of the complaint in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56 . . . [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. Rule 12(d).

Defendants' motion to dismiss includes the following exhibits: (1) provisions of the R&P cited by Plaintiff in the Amended Complaint (Defs.' Mot., Exs. A-C, Docket Entries 14-3 - 14-5), (2) the Summons and Complaint in a state court lawsuit filed by Plaintiff against Wehr (Defs.' Mot., Ex. D, Docket Entry 14-6), (3) a Grand Jury Report regarding Plaintiff's allegations (Defs.' Mot., Ex. E, Docket Entry 14-7), and (4) internal correspondence from the Police Department to Plaintiff regarding a workers' compensation claim, (Defs.' Mot., Ex. F, Docket Entry 14-8).  Plaintiff does not object to the Court's consideration of these documents.  (See generally Pl.'s Br., Docket Entry 17.)

The Court finds that the provisions of the R&P annexed to Defendants' motion at Exhibits A through C are incorporated by reference, as the Amended Complaint expressly cites these R&P provisions.  (Am. Compl. ¶¶ 30, 38, 48.)  Accordingly, the Court

16

will consider Exhibits A through C in determining Defendants'
motion. However, the Court finds that the Summons and Complaint
in Plaintiff's state court lawsuit against Wehr, the Grand Jury
Report, and the internal correspondence regarding worker's
compensation are not incorporated by reference or otherwise
"integral" to the Amended Complaint. The Court declines to convert
Defendants' motion into a motion for summary judgment and will not
consider Defendants' Exhibits D through F.

I.  Section 1983

    Defendants argue that Plaintiff's Section 1983 claim
should be dismissed based on her failure to allege facts
establishing municipal liability.[3] (Defs.' Br., Docket Entry 14-
9, at 3-10.) The Court disagrees.

    A municipality will not be held liable pursuant to
Section 1983 based on a theory of respondeat superior for their

---

[3] While Defendants generally assert that "Plaintiff has failed to
allege facts sufficient to establish a constitutional violation
committed by the County," (Defs.' Br. at 11-12), their brief
does not address Plaintiff's underlying constitutional
deprivation in detail. "The Second Circuit has held that claims
of sexual harassment, brought under the Equal Protection Clause,
are actionable under § 1983." Dawson v. Cty. of Westchester,
351 F. Supp. 2d 176, 193 (S.D.N.Y. 2004) (citation omitted).
For the reasons set forth below in the Court's discussion of
Plaintiff's Title VII claims, Plaintiff has stated an underlying
constitutional deprivation based on a hostile work environment.
See Kohutka v. Town of Hempstead, 994 F. Supp. 2d 305, 322-23
(E.D.N.Y. 2014) ("[a] plaintiff may state a claim under § 1983
for improper sexual conduct that creates a hostile work
environment") (internal quotation marks and citation omitted).

employees' torts.  <u>Brewster v. Nassau Cty.</u>, 349 F. Supp. 2d 540,

549 (E.D.N.Y. 2004) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436

U.S. 658, 692, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

However, a municipality may be liable "for actions taken pursuant

to official municipal policy that cause constitutional torts."

<u>Id.</u> (internal quotation marks and citation omitted).  Thus, a

plaintiff who files a Section 1983 action against a municipality

must plead the following elements: "(1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a

denial of a constitutional right."  <u>Brewster</u>, 349 F. Supp. 2d at

549 (internal quotation marks and citation omitted).  <u>See also</u>

<u>W.A. v. Hendrick Hudson Cent. Sch. Dist.</u>, No. 14-CV-8093, 2016 WL

1274587, at *9 (S.D.N.Y. Mar. 31, 2016) ("a plaintiff must

establish a causal link between the municipality's policy, custom,

or practice and the alleged constitutional injury").

     The plaintiff will establish a municipal policy or

custom by alleging: (1) the municipality has officially endorsed

a formal policy; (2) municipal officials have taken actions or

made decisions based on final decision-making authority that

caused the alleged violation of civil rights; (3) the existence of

a practice significantly "persistent and widespread" to be

considered a "custom of which constructive knowledge can be implied

on the part of policymaking officials"; or (4) the policymakers'

failure to appropriately train or supervise subordinates,

"amounting to 'deliberate indifference' to the rights of those who
come in contact with the municipal employees." Bonds v. Suffolk
Cty. Sheriff's Dep't, No. 05-CV-3109, 2006 WL 3681206, at *2
(E.D.N.Y. Dec. 5, 2006) (citations omitted).  At the motion to
dismiss phase of an action, "plaintiff need not prove that she
would succeed on her claim of Monell liability, but must merely
show that she has a plausible claim that would entitle her to
relief."  Drees v. Cty. of Suffolk, No. 06-CV-3298, 2007 WL
1875623, at *19 (E.D.N.Y. Jun. 27, 2007).

　　　Here, Plaintiff alleges that the County is liable under
Section 1983 based on three theories: (1) the County's policy that
a sexual harassment complaint investigation will only begin after
the completion of the parallel criminal investigation, (2) the
County's policy or custom of condoning sexual harassment, and (3)
the County's deliberate indifference based on its failure to
supervise and train employees.  (Pl.'s Br. at 5-7.)  The Court
will address each theory in turn.

A.    Complaint Investigation Policy

　　　Plaintiff alleges that the decision to place the internal
investigation "on hold" pending the criminal investigation was
made by Sergeant Lynch at the direction of Commissioner Webber and
that Commissioner Webber "has final decision-making authority and
is a policymaker in charge of the report of and the investigation
into a complaint of sexual harassment by an employee of the Police

19

Department." (Pl.'s Br. at 5-6.) The Court construes Plaintiff's brief as arguing that Commissioner Webber's inaction creates a basis for <u>Monell</u> liability based on his status as a final policymaker. The Court disagrees. (Pl.'s Br. at 5-6.)

"'When an official has final authority over significant matters involving the exercise of discretion, the choices he [or she] makes represent government policy.'" <u>Hendrick Hudson Cent. Sch. Dist.</u>, 2016 WL 1274587, at *12 (quoting <u>Nagle v. Marron</u>, 663 F. 3d 100, 116 (2d Cir. 2011); alteration in original). An official is a final policymaker where his decisions "for practical or legal reasons constitute the municipality's final decisions." <u>Pugliese v. Long Island R.R. Co.</u>, No. 01-CV-7174, 2006 WL 2689600, at *4 (E.D.N.Y. Sept. 19, 2006) (internal quotation marks and citations omitted).

Even assuming, <u>arguendo</u>, that Commissioner Webber is the final policymaker with respect to internal investigations of sexual harassment complaints, the Amended Complaint's sole allegation as to his involvement in this matter is the assertion that Sergeant Lynch enforced a "policy" of placing internal investigations "on hold" at Commissioner Webber's "direction and under [his] authority." (Compl. ¶ 51.) This vague allegation is insufficient to plausibly plead that Commissioner Webber took action that constitutes municipal policy. Parenthetically, the Amended Complaint also fails to establish that Sergeant Lynch's

placement of the internal investigation "on hold" was a "discriminatory practice of subordinate employees . . . so manifest" that it can imply Commissioner Webber's constructive acquiescence as a policymaker.  Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 308 (E.D.N.Y. 2012) (internal quotation marks and citation omitted).

Moreover, "[a] single incident exemplifying a custom or policy will generally not give rise to municipal liability." Davis v. City of N.Y., No. 00-CV-4309, 2000 WL 1877045, at *7 (S.D.N.Y. Dec. 27, 2000).  See also Raphael v. Cty. of Nassau, 387 F. Supp. 2d 127, 131 (E.D.N.Y. 2005) ("[i]t is well-established that a single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy") (internal quotation marks and citation omitted).  Plaintiff's allegations relate to one incident of inaction by Sergeant Lynch, (see Am. Compl. ¶¶ 39), and Plaintiff does not allege that the Police Department placed other internal investigations "on hold" pending the completion of parallel criminal investigations. (See also Defs.' Br. at 5.)

B.    Inaction Regarding Sexual Harassment

Plaintiff argues that the Police Department's policy of condoning and/or failing to address sexual harassment--as evidenced by Officer Thompson, Sergeant O'Shea, Lietenant Riggio, and/or Captain Rios' failure to investigate or take action in

response to Plaintiff's disclosures of Officer Wehr's conduct--
constitutes a municipal custom.  (Pl.'s Br. at 6.)

"'[I]naction such as the persistent failure to
discipline subordinates who violate persons' civil rights could
give rise to an inference of an unlawful municipal policy of
ratification of unconstitutional conduct.'" <u>Peguero-Miles v. City
Univ. of N.Y.</u>, No. 13-CV-1636, 2014 WL 4804464, at *10 (S.D.N.Y.
Sept. 25, 2014) (quoting <u>Zahra v. Town of Southold</u>, 48 F.3d 674,
685 (2d Cir. 1995)).  <u>See</u> <u>also</u> <u>Cowan v. City of Mt. Vernon</u>, 95 F.
Supp. 3d 624, 642 (S.D.N.Y. 2015) (holding that the plaintiff
raised issues of fact regarding whether as a result of the Deputy
Commissioner/Commissioner of Human Resources' "failure to
investigate Plaintiff's complaints, the unconstitutional conduct-
-specifically, [her supervisor's] pervasive sexual harassment and
intimidation--became an accepted custom of the City").  <u>Cf.
Gierlinger v. N.Y. State Police</u>, 15 F.3d 32, 34 (2d Cir. 1994)
(holding that individual employers or responsible supervisors are
liable pursuant to Section 1983 "for failing properly to
investigate and address allegations of sexual harassment when
through this failure, the conduct becomes an accepted custom or
practice of the employer").

For example, in <u>Matusick v. Erie Cty. Water Auth.</u>, 757
F.3d 31, 62-63 (2d Cir. 2014), the Second Circuit upheld the jury's
finding of Section 1983 liability against the state agency where

22

supervisors were aware that the plaintiff was the victim of "frequent and severe" discrimination and harassment but failed to act. The Court noted, in relevant part, that "based on the pervasiveness of the harassment and the lack of response, the jury could reasonably have found that [the Executive Director's] inaction and acquiescence to the harassment that [the plaintiff] suffered allowed the harassment to become the custom and practice, if not the policy, of the [municipal agency]." Id. at 63.

The Court finds that the Amended Complaint plausibly alleges inaction on the part of supervisory officials that is sufficiently widespread to constitute a municipal custom. In September 2014, Plaintiff advised two superiors--Lieutenant Riggio and Captain Rios--about Officer Wehr's conduct and both failed to take any action. (Am. Compl. ¶¶ 26, 28.) But see Pugliese, 2006 WL 2689600, at *4 ("contrary to [the plaintiff's] suggestion, evidence that his managers ignored his complaints on three occasions does not establish that such actions were widespread policy throughout [the employer]"). While Plaintiff did not initially disclose Officer Wehr's identity to Captain Rios, when Plaintiff did share Officer Wehr's name on October 8, 2014, Captain Rios indicated that he already knew that Officer Wehr was Plaintiff's attacker. (Am. Compl. ¶ 34.) Captain Rios also told Plaintiff that "there would be backlash . . . if and when she names her attacker." (Am. Compl. ¶ 28.) Additionally, Lieutenant Riggio

also ignored Sergeant O'Shea's separate disclosure to him regarding Officer Wehr's conduct. (Am. Compl. ¶ 25 ("A few days later, [Plaintiff] learned that O'Shea had revealed the June 2014 incident to his supervisor, Lieutenant Riggio[.]")

Defendants' position that the Amended Complaint is limited to allegations that various Police Department officials failed to follow the pre-existing harassment policies set forth in the R&P, (Defs.' Br. at 12-13), is unduly narrow. The Amended Complaint's citation to R&P provisions that these official allegedly violated does not dilute its allegations that supervising officials' failure to respond to known sexual harassment constitutes a practice sufficiently widespread to constitute a municipal custom. See Bonds, 2006 WL 3681206, at *2. Cf. Wise v. N.Y. City Police Dep't, 928 F. Supp. 355, 363; 364-65 (S.D.N.Y. 1996) (holding that, notwithstanding the police department's official policy prohibiting sexual harassment, the police officer raised genuine issues of fact regarding, inter alia, her claim that "sexual harassment was so widespread to constitute the constructive acquiescence of senior policymakers of the [police] Department").

Defendants also argue that Plaintiff cannot establish causation between a policy or custom and her constitutional deprivation. (Defs.' Br. at 4.) Particularly, Defendants assert that Plaintiff's PTSD diagnosis, inability to return to work due

to an allegedly hostile work environment, and loss of earning capacity are the result of Office Wehr's actions, not a municipal policy. (Defs.' Br. at 6.) However, Plaintiff has alleged a causal connection between previously noted custom of the County's failure to address sexual harassment and her alleged constitutional injury. After reporting Officer Wehr's conduct to Lieutenant Riggio and Captain Rios, Plaintiff had another altercation with Officer Wehr where he "taunt[ed] and intimidate[ed] her." (Am. Compl. ¶ 31.) Plaintiff also alleges that the Police Department's inaction "exacerbated her emotional pain and suffering from the assault itself" and resulted in her being "fearful of returning to work." (Am. Compl. ¶¶ 33, 49.) The Court finds that there is a causal connection between the Police Department's failure to address known sexual harassment and the harms of a hostile work environment.

C.    Deliberate Indifference

A municipality is liable for inadequate training that amounts to "deliberate indifference" where:

> (1) a policymaker knows to a moral certainty that employees will confront a given situation, (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation, and (3) the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights.

25

Raphael, 387 F. Supp. 2d at 131.  The Court finds that the Complaint fails to plead deliberate indifference based on the Police Department's failure to train its employees regarding sexual harassment.  The Police Department has formal policies addressing harassment and sexual harassment.  (See Defs.' Ex. A at 9-10; Defs.' Ex. C.)  Plaintiff has not alleged that the Police Department's harassment policies are inadequate, nor has she alleged that employees do not receive sexual harassment training. Cf. Connick v. Thompson, 563 U.S. 51, 63, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) ("[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights"); Smith v. Town of Hempstead, 21 F. Supp. 3d 202, 205 (E.D.N.Y. 2014) (holding that the plaintiff pled deliberate indifference where she alleged that the Town failed to disseminate its sexual harassment policy and failed to provide sexual harassment training).

Additionally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62, 131 S. Ct. at 1360 (citation omitted). See also Brewster, 349 F. Supp. 2d at 549 (a complaint asserting deliberate indifference based on failure to train or supervise fails to plead a custom or policy where it does not

"alleg[e] any facts beyond the specific instance giving rise to the complaint . . . ."). Plaintiff has not alleged other instances of similar constitutional violations and relies solely on the Police Department's inaction with respect to Officer Wehr's conduct. Plaintiff's vague allegation of a "history of inaction by the Police Department with regard to prior complaints of sexual harassment," (Compl. ¶¶ 33, 43), does not suffice.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claim against the County is DENIED as to the alleged policy of failing to address sexual harassment and GRANTED as to deliberate indifference and the alleged policy of commencing a sexual harassment investigation after the completion of the parallel criminal investigation.

D. Individual Defendants

Plaintiff also asserts a Section 1983 claim against Bellone and Commissioner Webber, alleging that they "unlawfully participated in and/or permitted the . . . discriminatory actions, hostile work environment, and/or acts of retaliation due to Plaintiff's sex and complaints of discrimination and sexual harassment[.]" (Am. Compl. ¶ 57.) "To establish a claim under Section 1983 against an individual defendant, the plaintiff must demonstrate the defendant's personal involvement in the alleged discrimination." Cowan, 95 F. Supp. 3d at 643 (citation omitted). However, the Amended Complaint fails to plausibly plead that

27

Bellone or Commissioner Webber were personally involved in the hostile work environment that resulted from Officer Wehr's sexual assault. Indeed, the Complaint does not allege that Bellone or Commissioner Webber were aware of Officer Wehr's conduct. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claim against Bellone and Commissioner Webber in their individual capacities is GRANTED.

Defendants' motion is also GRANTED with respect to Plaintiff's Section 1983 claims against Bellone and Commissioner Webber in their official capacities, as such claims "are duplicative of the <u>Monell</u> claims against the County." <u>Drees</u>, 2007 WL 1875623, at *19.

II. <u>Title VII</u>

    A.   <u>Hostile Work Environment</u>

To state a <u>prima facie</u> case of sexual harassment based on a hostile work environment, the plaintiff must establish: "(1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of employment." <u>Schmidt v. State Univ. of N.Y. at Stonybrook</u>, No. 02-CV-6083, 2006 WL 1307925, at *7 (E.D.N.Y. May 9, 2006) (internal quotation marks and citation omitted). <u>Accord</u> <u>Bethea v. City of N.Y.</u>, No. 11-CV-2347, 2014 WL 2616897, at *5 (E.D.N.Y. Jun. 12, 2014). Defendants concede that

28

Plaintiff is a member of a protected class and Wehr's conduct constituted an "unwelcome advance." (Defs.' Br. at 15.) However, Defendants argue: (1) the Amended Complaint does not support the inference that Officer Wehr's harassment was based on gender, and (2) Plaintiff does not allege facts establishing that Officer Wehr's harassment affected the terms and conditions of her employment. (Defs.' Br. at 15.)

"[F]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive environment.'" Schmidt, 2006 WL 1307925, at *10 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986); second alteration in original). This standard necessitates both an objective and subjective inquiry as "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Littlejohn v. City of N.Y., 795 F.3d 297, 321 (2d Cir. 2015) (internal quotation marks and citation omitted).

In determining whether an environment is hostile, the Court examines all of the circumstances, which "'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

29

employee's work performance.'"  Redd v. N.Y. Div. of Parole, 678
F.3d 166, 175 (2d Cir. 2012) (quoting Harris v. Forklift Sys.,
Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295
(1993)) (emphasis omitted).  While one single act can transform
the plaintiff's employment, "[i]solated acts, unless very serious,
do not meet the threshold of severity or pervasiveness."  Moore v.
Verizon, No. 13-CV-6467, 2016 WL 825001, at *11 (S.D.N.Y. Feb. 5,
2016) (internal quotation marks and citation omitted; alteration
in original).

        The Court finds that Plaintiff has plausibly pleaded a
hostile work environment claim.  First, Defendants' argument that
Officer Wehr's actions were not based on gender is quickly disposed
of.  (Defs.' Br. at 15.)  The overtly sexual nature of Officer
Wehr's conduct leaves no question that such action took place
because of Plaintiff's gender.  Cf. Reid v. Ingerman Smith LLP,
876 F. Supp. 2d 176, 183-84 (E.D.N.Y. 2012) (holding, in the
context of the plaintiff's hostile environment claim based on same-
sex sexual harassment, that "[the supervisor's] act of grabbing
[the plaintiff's] breast as a 'sexual advance' is sufficient to
show that Sadowski's conduct was 'because of' [the plaintiff's]
sex").

        Second, Plaintiff's allegation that Officer Wehr forced
Plaintiff to touch his penis is sufficiently severe to plead a
change in the terms and conditions of employment.  "'[D]irect

30

contact with an intimate body part constitutes one of the most
severe forms of sexual harassment,'" and similar allegations have
sufficed to survive motions to dismiss and motions for summary
judgment. Reid, 876 F. Supp. 2d at 185-86 (quoting Redd, 678 F.3d
at 180; collecting cases) (denying the defendant's motion to
dismiss where the plaintiff alleged that her former supervisor
"grabbed and squeezed" one of her breasts on one occasion). See
also Lashley v. New Life Business Inst., Inc., No. 13-CV-2683,
2015 WL 1014128, at *7 (E.D.N.Y. Mar. 9, 2015) (holding that where
the defendant grabbed, rubbed, and performed oral sex on the
plaintiff "[t]his unwanted physical contact and sex act alone are
sufficient to find a hostile work environment"). Moreover, Officer
Wehr's conduct is compounded by the allegation that he pressed his
genitals against Plaintiff's back on a separate occasion. (See
Am. Compl. ¶ 18.)[4]

    1. Employer Liability

When the harasser is a co-worker, the employer is only
liable for negligence, namely "that the employer knew or should
have known about the harassment and failed to take corrective
action, in permitting the harassing conduct to endure. Bethea,

---

[4] The Court need not determine whether Plaintiff has plead a
hostile work environment based on Officer Wehr's continued
contact with her based on its determination that Officer Wehr's
sexual assault was sufficient to plead the existence of a
hostile work environment. (See Pl.'s Br. at 12-14.)

2014 WL 2616897, at *5. To establish that her employer failed to take appropriate action, the plaintiff must demonstrate: "(1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009).

The employer is charged with actual or constructive knowledge of harassment where: (1) the official's status in the management hierarchy qualifies him as a "proxy" for the company, (2) the official has "a duty to act on the knowledge and stop the harassment," or (3) the official has a "duty to inform the company of the harassment." Torres v. Pisano, 116 F.3d 625, 636-37 (2d Cir. 1997) (citations omitted). However, when disclosure is made to a non-supervisory co-worker who is not authorized to investigate, suspend, or terminate the alleged harasser, such co-worker's failure to act will only render the employer liable where the non-supervisory employee "has an official or strong de facto duty to act as a conduit to management for complaints about work conditions." Id. (internal quotation marks and citation omitted).

Defendants argue that Plaintiff's allegations regarding her disclosures to Officer Thompson, Lieutenant Riggio, Sergeant O'Shea, and Captain Rios do not plead that the County had

constructive knowledge of Wehr's harassment.[5] (Defs.' Br. at 19-
24.) Defendants further argue that even if the Complaint
adequately pleads constructive knowledge, Sergeant O'Shea and
Lieutenant Rios responded adequately. (Defs.' Br. at 22-24.) The
Court will address Plaintiff's disclosures to Lieutenant Riggio
and Captain Rios in turn.[6]

a.  Lieutenant Riggio

The Court is unpersuaded by Defendants' attempt to cast
Plaintiff's disclosure to Lieutenant Riggio as akin to dropping a
"hint." (Defs.' Br. at 21.) While Plaintiff did not name Officer
Wehr when speaking with Riggio, she advised that a person in Crime
Control who used to work in the Sixth Precinct exposed himself to
her in the COPE office.[7] (Compl. ¶ 26.) The Amended Complaint
plausibly alleges that Plaintiff provided Riggio with notice of

---

[5] Defendants concede that the County had actual knowledge of
Officer Wehr's harassment on October 8, 2014, when Plaintiff
"told her superiors and union delegates." (Defs.' Br. at 19.)

[6] As set forth infra, based on the Court's determination that
Plaintiff's disclosures to Lieutenant Riggio and Captain Rios
suffice to provide the County with constructive knowledge, the
Court need not determine whether Plaintiff's disclosures to non-
supervisory employees--namely, Officer Thompson and Sergeant
O'Shea--also provided the County with constructive knowledge.

[7] The alleged inconsistency in the Amended Complaint as to
whether Officer Wehr worked in Crime Control at the time of
Plaintiff's conversation with Lieutenant Riggio, (Defs.' Br. at
20), is of no moment with respect to the Court's analysis in
light of the Amended Complaint's allegation that Plaintiff
disclosed to Lieutenant Riggio that a coworker exposed himself
to her.

sexual harassment notwithstanding her decision not to disclose Officer Wehr's identity.

Defendants also argue that Plaintiff's allegations regarding Lieutenant Riggio do not suffice to plead constructive knowledge because Plaintiff did not indicate that the incident in question was part of an ongoing course of conduct, citing Murray v. N.Y. Univ. Coll. of Dentistry, 57 F.3d 243, 250 (2d Cir. 1995). (Defs.' Br. at 20.)  However, the facts and posture of Murray are wholly dissimilar from those at bar.  In Murray, the plaintiff, a dental student, alleged harassment by a patient in the college's dental clinic.  Murray, 57 F.3d at 245-46.  The Second Circuit analyzed Title VII hostile work environment principles in the context of the plaintiff's Title IX claim and held, inter alia, that the dental college could not be charged with constructive knowledge based on Plaintiff's complaint to a faculty member that the patient was "staring at [the plaintiff] and trying to get her attention." Id. at 245, 250 (internal quotation marks and citation omitted).  The Second Circuit held that the complaint failed to allege that the patient's conduct "was of an ongoing sexually offensive nature," and while the plaintiff considered the conduct to have sexual overtones given the patient's prior behavior, she did not inform the faculty member of the "sexual connotations" or that this inappropriate behavior "was part of that ongoing course of harassment." Id. at 250.

34

The Court finds that the holding of <u>Murray</u> is limited to its facts and declines to adopt Defendants' apparent position that constructive knowledge requires disclosure of an ongoing course of conduct. The <u>Murray</u> patient's behavior was not overtly sexual and the Second Circuit aptly noted that the plaintiff needed to either explain the sexual connotations of the patient's behavior to the faculty member or inform him of the patient's history of harassment. Conversely, the conduct disclosed to Lieutenant Riggio by Plaintiff--that a coworker exposed himself to her in the COPE office--does not require further explanation for Lieutenant Riggio to grasp the obvious sexual nature of the act in question.

As Lieutenant Riggio failed to take any action in response to Plaintiff's disclosure, the Court finds that he failed to "take appropriate remedial action." <u>Duch</u>, 588 F.3d at 762 (internal quotation marks and citation omitted).

b. <u>Captain Rios</u>

Whether Plaintiff's disclosure to Captain Rios constitutes constructive notice presents a close issue. The Amended Complaint alleges that after Plaintiff told Captain Rios that an unnamed coworker "exposed himself to her with an erect penis and forcibly made her touch his penis," she told Captain Rios not to report the incident because she would report it when she was ready. (Am. Compl. ¶ 28.) Defendants argue that Captain Rios' failure to report Plaintiff's disclosure was reasonable in

35

light of her request that he not report the incident, analogizing
this matter to the facts of Duch. (Defs.' Br. at 23-24.) Plaintiff
avers that Captain Rios acted unreasonably in keeping her
disclosure confidential. (Pl.'s Br. at 19.)  The Court concurs
with Plaintiff.

      The question of whether a supervisor behaves
unreasonably by honoring an employee's request for confidentiality
is determined on a case by case basis. Torres, 116 F.3d at 639.
In Torres, the Second Circuit held that the plaintiff's supervisor
acted reasonably in failing to report her allegations of harassment
where the plaintiff wrote a letter that "recounted only a few
relatively minor incidents of harassment" and requested that the
supervisor "keep the matter 'confidential.'"  Id. at 638-39.  The
Court noted that "[t]here is certainly a point at which harassment
becomes so severe that a reasonable employer simply cannot stand
by, even if requested to do so by a terrified employee." Id. at
639.  However, the Court concluded that Torres was not such a case
based on the absence of any allegations of "serious physical or
psychological harm that would have occurred if the employer did
not act forthwith," as well as the fact that the plaintiff was the
only victim of her coworker's harassment.  Id.

      In Duch, the Second Circuit similarly concluded that a
non-supervisory employee behaved reasonably in honoring the
plaintiff's request for confidentiality regarding her harassment

36

allegations.  Duch, 588 F.3d at 764.  The plaintiff advised the
non-supervisory employee about "most incidents" involving her co-
worker's harassment--which included "physical contact, sexually
graphic language, and physical gestures"--and asked that she not
report these incidents.  Id. at 760, 764.  The Court held that the
non-supervisory employee did not breach a duty to the plaintiff
where she was not "aware of the psychological toll that [the
coworker's] harassment was allegedly inflicting on [the
plaintiff]."  Id. at 764.

    The Court finds that the Complaint plausibly pleads a
situation sufficiently severe that a reasonable supervisor would
not have honored Plaintiff's request for confidentiality.  As
previously noted, Plaintiff disclosed to Captain Rios that a police
officer "exposed himself to her with an erect penis and forcibly
made her touch his penis."  (Compl. ¶ 28.)  Unlike the plaintiffs
in Torres and Duch, Plaintiff has plead facts demonstrating that
Captain Rios was aware of the psychological toll that Officer
Wehr's behavior inflicted on Plaintiff.  Captain Rios approached
Plaintiff after her coworkers advised him that there was "something
wrong" with Plaintiff and "she was not acting like herself."
(Compl. ¶ 28.)  Plaintiff also alleges that she told Captain Rios
that she was afraid of coming in contact with her attacker again.
(Compl. ¶ 28.)  The fact that Plaintiff did not name her attacker
does not obviate Captain Rios' duty to address allegations of

37

sexual assault, particularly where the psychological harm suffered by Plaintiff was evident.

Captain Rios' "hostile" response of asking Plaintiff why she failed to scream and yell at her attacker and why she waited to report the incident was clearly unreasonable. (Compl. ¶ 28.) This response was compounded by Captain Rios' inaction and assertion that Plaintiff would suffer "backlash" when she named her attacker. (Compl. ¶ 28.)

Accordingly, Plaintiff has plausibly stated a claim for hostile work environment. Plaintiff has plead the existence of a hostile work environment, as well as a basis for imputing constructive knowledge to the County. Plaintiff's disclosures to Lieutenant Riggio and Captain Rios were sufficient to charge the County with constructive knowledge and their unreasonable responses to such disclosures forms a basis for imputing employer liability. Thus, Defendants' motion to dismiss Plaintiff's hostile work environment claim is DENIED.

B. <u>Retaliation</u>

Plaintiff argues that the Amended Complaint asserts a Title VII retaliation claim based on two theories: (1) a retaliatory hostile work environment, and (2) retaliation based on the Police Department's failure to complete the Injured Employee Report that would start Plaintiff's worker's compensation process. (Pl.'s Br. at 23-25.)

To state a claim for retaliation under Title VII, a plaintiff must plead facts demonstrating that: "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (citation omitted). Title VII retaliation claims are analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.3d 2d 668 (1973). Littlejohn, 795 F.3d at 315. "[H]owever, plaintiff is not required to plead facts sufficient to establish a prima facie case of Title VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss." James v. Countrywide Fin. Corp., 849 F. Supp. 2d 296, 311 (E.D.N.Y. 2012). Rather, the plaintiff "need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation." Littlejohn, 795 F.3d at 316.

"To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of [her] employment."

39

Hahn v. Bank of Am., Inc., No. 12-CV-4151, 2014 WL 1285421, at *22
(S.D.N.Y. Mar. 31, 2014), aff'd, 607 F. App'x 55 (2d Cir. 2015)
(internal quotation marks and citations omitted).  Further, to
demonstrate causation between the protected activity and
hostility, the plaintiff must establish "some increase in the
discrimination or harassment--either a ratcheting up of the
preexisting behavior, or new, additional forms of harassment[.]"
Bacchus v. N.Y. City Dep't of Educ., 137 F. Supp. 3d 214, 244
(E.D.N.Y. Sept. 30, 2015) (internal quotation marks and citations
omitted; alteration in original).[8]

          The Court finds that Plaintiff has failed to plausibly
plead a retaliatory hostile work environment claim.  Plaintiff
engaged in a protected activity by complaining about sexual
harassment, see Kantor-Hopkins v. Cyberzone Health Club, No. 06-
CV-0643, 2007 WL 2687665, at *4 (E.D.N.Y. Sept. 10, 2007)
("[c]omplaining about sexual harassment is a protected activity").
While, as addressed above, Plaintiff has pled the existence of a
hostile work environment, she has failed to allege that the

---

[8] While Courts have questioned whether the Supreme Court's
decision in Burlington N. and Santa Fe Ry. Co. v. White, 548
U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), changed the
standard for retaliatory hostile work environment claims, "[i]n
the years following Burlington, nearly every decision to address
a claim for retaliatory hostile work environment has held that a
plaintiff must satisfy the same standard used to evaluate
conventional hostile work environment claims."  Hahn, 2014 WL
1285421, at *22 n.14 (internal quotation marks, alteration and
citation omitted).

harassment that occurred <u>after</u> she complained was "sufficiently continuous and concerted to have altered the conditions of [her] employment." <u>Hahn</u>, 2014 WL 1285421, at *22.  Plaintiff's sole allegations of harassment <u>after</u> she complained to Captain Rios and Lieutenant Riggio consists of: (1) the October 6, 2014, incident in which Officer Wehr "taunt[ed]" and "intimidate[ed]" Plaintiff while she was stationed outside of another police officer's home, (Compl. ¶ 31), and (2) conversations with Sergeant O'Shea and Lieutenant Riggio in October and December 2014 in which they questioned why she waited to come forward and advised Plaintiff that other members of the Police Department felt that there was "more to the story," (Compl. ¶¶ 40-41).  These allegations fail to plausibly assert that continuous, intensified harassment occurred after Plaintiff complained about Officer Wehr's conduct.

Plaintiff relies on <u>Bethea</u> for the notion that the Court should consider Defendants' alleged failure to remediate the harassment in determining her retaliatory hostile work environment claim.  (Pl.'s Br. at 25.)  However, the Court need not reach the issue of employer liability in the absence of a plausible underlying retaliation claim.  Moreover, while the <u>Bethea</u> Court upheld a Title VII retaliation claim, the plaintiff in that matter alleged that immediately after complaining about sexual harassment she was suspended, and she was later placed on modified assignment and subjected to an administrative transfer that resulted in a

41

loss of overtime, change of assignments, and loss of income. Bethea, 2014 WL 2616897, at *7.

Alternatively, Plaintiff alleges that the County retaliated against her by failing to complete the Injured Employee Report and thereby forcing her to use her accruals during her leave of absence. (Pl.'s Br. at 25.) The Amended Complaint alleges that Plaintiff had to use sick, vacation, and personal leave days to receive a paycheck during her leave of absence and as a result, she has been precluded from receiving a lump sum payment upon her retirement for days accrued. (Am. Compl. ¶ 47.) The Amended Complaint also alleges that Captain Rios failed to complete the Injured Employee Report that would start the process for Plaintiff to receive Worker's Compensation. (Am. Compl. ¶ 48.) However, the Amended Complaint fails to allege that Captain Rios failed to complete the Injured Employee Report in retaliation for Plaintiff's sexual harassment complaint. Rather, Plaintiff appears to assert that Captain Rios' failure to complete this report was discriminatory, not retaliatory, based on the Amended Complaint's allegation that "[s]imilarly situated male employees, who suffered from PTSD had the necessary paperwork filled out in order to receive Workmen's Compensation." (Am. Compl. ¶ 48.)

Parenthetically, Plaintiff's third cause of action asserts that the County "retaliated against Plaintiff by failing to conduct a reasonable investigation into her complaint of sexual

harassment or guarantee a work place free of sexual harassment in response to her opposing discriminatory practices in violation of Title VII[.]" (Am. Compl. ¶ 61.) To the extent that the Amended Complaint can be construed as asserting that the County's failure to investigate Plaintiff's sexual harassment complaint constitutes an adverse action, the Second Circuit has held that "[a] failure to investigate can be considered an adverse employment action only if the failure is in retaliation for some separate, protected act by the plaintiff." Brayboy v. O'Dwyer, 633 F. App'x 557, 558 (2d Cir. 2016) (emphasis supplied; internal quotation marks and citation omitted). Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is GRANTED.

C.  Discrimination

The Court notes that Defendants' motion and Plaintiff's brief fail to address Plaintiff's Title VII discrimination claim, (see Am. Compl. ¶ 59 ("Defendant, the County, has subjected Plaintiff to discrimination based on her sex . . . .")). In any event, while the Amended Complaint fails to state a disparate treatment claim based on the vague allegation that "[s]imilarly situated male employees, who suffered from PTSD had the necessary paperwork filled out in order to receive Workmen's Compensation," (Am. Compl. ¶ 48), the Court finds that the Amended Complaint plausibly pleads a Title VII discrimination claim based on the allegation that Plaintiff was moved to a less desirable office

43

than her male partner and Inspector Palmieri "felt they could not have a woman off the wall, carrying on around the precinct." (Am. Compl. ¶¶ 14-16.) Accordingly, Defendants' motion is DENIED to the extent it seeks dismissal of Plaintiff's discrimination claim.

III. NYSHRL Claims Against the County

"New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII [and the Court] analyze[s] these claims in tandem." Valenti v. Massapequa Union Free Sch. Dist., No. 09-CV-09771, 2012 WL 1038811, at *20 (E.D.N.Y. Mar. 28, 2012) (internal quotation marks and citation omitted; alterations in original). Accordingly, Defendants' motion to dismiss the NYSHRL claims against the County is GRANTED with respect to Plaintiff's retaliation claim and DENIED with respect to Plaintiff's hostile work environment and discrimination claims for the same reasons set forth above regarding Plaintiff's Title VII claims.

IV. NYSHRL Claim Against Bellone and Commissioner Webber

The Court construes the Amended Complaint as asserting claims against Bellone and Commissioner Webber pursuant to NYSHRL Sections 296(1) and (7), as well as an aiding and abetting claim under NYSHRL Section 296(6). (Am. Compl. ¶¶ 62-68.)

NYSHRL Section 296(1) bars employers from discriminating against employees or job applicants based on, inter alia, sex. Jericho Union Free Sch. Dist., 904 F. Supp. 2d at 304; N.Y. Exec.

44

Law 296(1).  "Individuals are liable as employers under Section 296(1) only if they have an ownership interest, or if they themselves have the authority to hire and fire employees." <u>Id.</u> (internal quotation marks and citations omitted).  Additionally, the plaintiff must establish that the defendant "had some . . . connection [to] the underlying [claim]." <u>Magnotti v. Crossroads Healthcare Mgmt. LLC</u>, No. 14-CV-6679, 2016 WL 3080801, at *2 (E.D.N.Y. May 27, 2016) (internal quotation marks and citation omitted).

Here, while Plaintiff alleges that Bellone is chief executive officer of the County, the Amended Complaint does not assert that Bellone has authority to hire and fire Police Department personnel. (Am. Compl. ¶ 7.)  Indeed, the Amended Complaint alleges that Bellone is responsible for appointing County department heads "with the approval of the County Legislature." (Am. Compl. ¶ 7.)  The Amended Complaint fails to allege that Commissioner Webber has the authority to hire and fire Police Department employees, although the Court acknowledges that Commissioner Webber likely possesses such authority given his high ranking position in the Police Department.  In any event, as set forth <u>infra</u>, the Amended Complaint fails to allege that Bellone or Commissioner Webber had any connection to Plaintiff's underlying claims.

NYSHRL Section 296(7) provides, in relevant part, that it is unlawful for an individual "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. Law 296(7). To state a prima facie NYSHRL retaliation claim, the plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Pedi v. Gov't Emps. Ins. Co., No. 11-CV-5977, 2012 WL 6918388, at *5 (S.D.N.Y. Dec. 10, 2012) (internal quotation marks and citation omitted). Again, as addressed infra, the Amended Complaint fails to plead that Bellone or Commissioner Webber had any involvement in the events precipitating this action. Plaintiff does not allege that Bellone or Commissioner Webber retaliated against her, discriminated against her, or even had any contact with her. While, as set forth above, Plaintiff has stated a retaliation claim against the County, the Amended Complaint does not allege that Bellone or Commissioner Webber knew of Plaintiff's protected activity of complaining about sexual harassment.

NYSHRL Section 296(6) provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law

§ 296(6).  Individuals may be liable under Section 296(6) if they "actually participate[d] in the conduct giving rise to a discrimination claim." Edwards v. Khalil, No. 12-CV-8442, 2016 WL 1312149, at *24 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted).  Actual participation does not require that the defendant "take part in the primary violation" as "[a]n individual [in] a supervisory role may also be held liable for a failure to take appropriative investigative or remedial measures upon being informed of offensive conduct." Id. (internal quotation marks and citation omitted).

Plaintiff argues that Bellone and Commissioner Webber were "personally involved" because they "creat[ed] and enforce[ed]" County policies and were "deliberately indifferent to the condoning of sexual harassment by Police Department members." (Pl.'s Br. at 27.)  However, the Amended Complaint does not allege that Bellone or Commissioner Webber created or enforced any policies; at most, the Complaint alleges that Lynch "held off" on her internal investigation "at the direction and under the authority of Bellone and Webber." (Am. Compl. ¶ 51.)  In any event, the Amended Complaint does not allege that Bellone or Commissioner Webber were "actually aware of any harassment or complaints." D'Annunzio v. Ayken, Inc., 25 F. Supp. 3d 281, 293-94 (E.D.N.Y. Jun. 10, 2014) (granting summary judgment on the NYSHRL aiding and abetting sexual harassment claim where the

47

defendant was responsible for, _inter_ _alia_, failing to distribute the employer's sexual harassment policy but was not "actually aware of any harassment or complaints, and existing caselaw does not support NYSHRL liability absent this knowledge") (collecting cases).

Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL claim against Bellone and Commissioner Webber is GRANTED.

V.   <u>Leave to Amend</u>

The Second Circuit has held that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cty. of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999). <u>See also</u> Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave [to amend] when justice so requires"). "However, a district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." <u>Perri v. Bloomberg</u>, No. 11-CV-2646, 2012 WL 3307013, at *4 (E.D.N.Y. Aug. 13, 2012).

While the Court is mindful that Plaintiff has already been granted one opportunity to amend the Complaint, (<u>see</u> Electronic Order dated December 18, 2015), the Court GRANTS Plaintiff leave to amend the claims dismissed pursuant to this Memorandum and Order.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 14) is GRANTED IN PART and DENIED IN PART. Defendants' motion is DENIED as to Plaintiff's Section 1983 claim against the County with respect to the alleged policy of failing to address sexual harassment and GRANTED with respect to deliberate indifference and the alleged policy of commencing sexual harassment investigations after the completion of the parallel criminal investigation. Defendants' motion is GRANTED with respect to Plaintiff's Section 1983 claim against Bellone and Commissioner Webber in their official and individual capacities. Defendants' motion is DENIED with respect to Plaintiff's hostile work environment and discrimination claims against the County under Title VII and the NYSHRL and GRANTED with respect to Plaintiff's retaliation claims against the County under Title VII and the NYSHRL. Defendants' motion is GRANTED with respect to Plaintiff's NYSHRL claims against Bellone and Commissioner Webber.

Plaintiff is GRANTED leave to amend the Amended Complaint to amend all dismissed claims within thirty (30) days of the date of this Memorandum and Order.

SO ORDERED.


                                           /s/ JOANNA SEYBERT
                                           _____
Dated:  September  __27__ , 2016           Joanna Seybert, U.S.D.J.
        Central Islip, New York

49